**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| HEATHER M. WERNETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. CIV 09-168-TUC-CKJ |
| vs. ) | |
| ) | **ORDER** |
| SERVICE PHOENIX, LLC, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court is Defendant Service Phoenix, LLC's Motion to Dismiss Plaintiff's Complaint and Compel Arbitration [Doc. # 4]. Plaintiff has filed a response and Defendant has filed a reply. The parties presented oral argument to the Court on June 22, 2009.

I. *Factual and Procedural Background*

On or about August 200, 2007, Plaintiff Heather M. Wernett ("Wernett") began working for Defendant Service Phoenix, LLC ("Service").

Craig Nassar ("Nassar"), who had recruited Wernett and was to become Wernett's new supervisor, presented Wernett with documents for her to sign. Nassar informed Wernett that the documents had to be signed so she could start working for Service. Wernett believed the documents to be the standard paperwork new employees expect to encounter when beginning a new job (e.g., I-9, W-2, insurance forms, etc.). To the best of Wernett's recollection, an Arbitration Agreement ("the Agreement") was included among the documents. There was no discussion of the Agreement and Wernett believed all of the

documents, including the Agreement, had to be signed in order for her to be hired by Service. Nassar and Wernett each signed the Agreement on August 6, 2007. *See* Motion, Ex. 1, p. 2.

The Agreement provides:

> In consideration of employment by Swisher International, Inc., Swisher Hygiene Franchise Corp., or any Swisher subsidiary ("Swisher"), the parties agree as follows:
>
> If any dispute arises out of or relates to Employee's employment with Swisher or the breach thereof, including but not limited to . . . Title VII of the Civil Rights Act claims . . . and if the dispute cannot be settled informally, the parties agree to submit the dispute to compulsory and binding arbitration as set forth below. by signing this Agreement, the parties waive any rights to file a lawsuit in federal or state courts except to enforce the arbitration award.

*Id.* at p.1.[1]

On March 3, 2009, Wernett filed a Complaint in the Superior Court of Arizona, County of Pima, alleging sex discrimination in violation of the Arizona Civil Rights Act and sex discrimination in violation of Title VII against Service and Defendant SHFC Arizona, LLC ("SHFC"). The action was subsequently removed to this Court.

On March 26, 2009, Service filed a Motion to Dismiss Plaintiff's Complaint and Compel Arbitration [Doc. # 4]. Wernett has filed a response and Service has filed a reply.

II. *Arbitration*

The Federal Arbitration Act ("FAA") was enacted to "overcome courts' reluctance to enforce arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002). The FAA reverses "the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991). Pursuant to the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any

---

[1] Wernett's affidavit indicates that Swisher International was the name by which Service was known. Opposition, Ex. A, p. 2. The Court will refer to the employer as Service.

contract." 9 U.S.C. § 2. Accordingly, "general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." *Adams*, 279 F.3d at 892, *citing Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (the FAA mandates district courts to direct parties to arbitration on issues as to which arbitration has been agreed upon). When evaluating the validity of an arbitration agreement, federal courts are to "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Furthermore, "'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999), *quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Moreover, since "[p]arallel state anti-discrimination laws are explicitly made part of Title VII's enforcement scheme," claims under the ACRA are arbitrable to the same extent as Title VII claims. *Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1303 n. 1 (9th Cir. 1994) (citing *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)), *cert. denied*, 516 U.S. 812, 116 S.Ct. 61, 133 L.Ed.2d 24 (1995).

Wernett asserts that the Agreement is not enforceable because it is procedurally unconscionable, is substantively unconscionable, and is a contract of adhesion.

A. *Contract of Adhesion*

While Arizona law favors arbitration, "it is more accurate to say that the law favors arbitration of disputes that the parties have agreed to arbitrate." *Southern Cal. Edison Co. v. Peabody Western Coal Co.*, 194 Ariz. 47, 51, 977 P.2d 769, 773 (1999). In a factually dissimilar case, the Supreme Court of Arizona has held contract terms requiring arbitration of medical malpractice claims unenforceable where the contract was adhesive and did not reflect the reasonable expectations of the parties. *Broemmer v. Abortion Services of Phoenix, Ltd.*, 173 Ariz. 148, 840 P.2d 1013 (1992).

"An adhesion contract is typically a standardized form 'offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract.'" *Broemmer*, 173 Ariz. at 150, 840 P.2d at 1015, *quoting Wheeler v. St. Joseph Hosp.*, 63 Cal.App. 3d 345, 356, 133 Cal.Rtr. 775, 783 (1976).

In this case, the Agreement is a form contract prepared by Service. Wernett states in her affidavit that it was her understanding that she had to sign the document to be hired by Service. *See Bennett v. Appaloosa Horse Club*, 201 Ariz. 372, 376, 35 P.2d 426, 430 (App. 2001) (the ability to negotiate negates any finding of adhesiveness). The "take it or leave it" nature leads to the conclusion that the Agreement is an adhesive contract. However, a contract of adhesion is fully enforceable unless legislative or judicial rules render it unenforceable. *Broemmer*, 173 Ariz. at 151, 840 P.2d at 1016. The Court, therefore, must consider whether the Agreement is unconscionable.

B. *Unconscionability*

Arizona's statutory provision on unconscionability, A.R.S. § 47-2302, provides:

> A. If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
>
> B. When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

As previously stated, the general contract defense of unconscionability may operate to invalidate arbitration agreements. *Adams*, 279 F.3d at 892. However, "[c]ourts should not assume an overly paternalistic attitude toward the parties to a contract by relieving one or another of them of the consequences of what is at worst a bad bargain[.]" *Nelson v. Rice*, 198 Ariz. 563, 568, 12 P.3d 238, 243 (App. 2000), *quoting Pacific Am. Leasing*, 152 Ariz. 96,

103, 730 P.2d 273, 280 (App. 1986).

"Unconscionability includes both procedural unconscionability, i.e., something wrong in the bargaining process, and substantive unconscionability, i.e., the contract terms per se." *Nelson*, 198 Ariz. at 567, 12 P.3d at 242, *quoting Phoenix Baptist Hosp. & Medical Ctr., Inc. v. Aiken*, 179 Ariz. 289, 283, 877 P.2d 1345, 1349 (App. 1994). The Supreme Court of Arizona has recognized that, while contracts may have elements of both procedural and substantive unconscionability, "a claim of unconscionability can be established with a showing of substantive unconscionability alone[.]" *Maxwell*, 184 Ariz. at 90, 907 P..2d at 59.

1. *Procedural Unconscionability*

Procedural unconscionability is concerned with unfair surprise; courts examine factors influencing the "the real and voluntary meeting of the minds of the contracting party: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible [and] whether there were alternative sources of supply of the goods in question." *Maxwell v. Fidelity Fin. Servs.*, 184 Ariz. 82, 89, 907 P.2d 51, 58 (1995), *quoting Johnson v. Mobil Oil Corp.*, 415 F.Supp. 264, 268 (E.D.Mich. 1976).

Wernett indicates that she believed she had to sign all of the documents presented to her before she would be hired by Service. Wernett asserts that she did not have a meaningful opportunity to negotiate the terms of the Agreement and that it was offered to her in a "take it or leave it" basis. Service asserts, however, that "boiler-plate," unbargained-for contract provisions are enforceable so long as they do not violate the aggrieved party's "reasonable expectations." *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.*, 140 Ariz. 383, 387-94, 682 P.2d 388, 392-99 (1984) (such provisions in insurance contracts can be enforced even if insured fails to read or understand the provisions); *see also Broemmer*, 173 Ariz. at 151, 840 P.2d at 1016. Service asserts that contractual terms are beyond the range

of reasonable expectations only if one party "has reason to believe that the other party would not have accepted the agreement if he had known the agreement contained the particular term." *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 247, 119 P.3d 1044, 1050 (App. 2005). Service asserts that Wernett offers no evidence that she did not have a chance to read the Agreement, Service buried the Agreement, the Agreement was illegible, the Agreement was bizarre or oppressive, the Agreement was contrary to prior negotiations, or that Service had any reason to believe that Wernett would not have accepted the Agreement if Wernett had known the Agreement contained any particular provision. *See Darner*, 140 Ariz. at 391-392, 682 P.2d at 396-97 (discussing factors that could violate reasonable expectations). Indeed, Wernett has alleged that the Agreement is oppressive, but she has not alleged any of the other factors that are considered in determining reasonable expectations as set forth in *Darner*.

It appears that, although the Agreement purports to be a mutual agreement, there is no internal indicia of bargained for exchange within the contract. Although mere inequality in bargaining power "is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context[,]" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), the inequality of bargaining power is considered. Additionally, Wernett does not recall any discussion between her and Nassar regarding the Agreement; in other words, it appears that the terms of the Agreement were not explained to Wernett. The Restatement (Second) of Contracts ("Restatement") provides that "the more standardized the agreement and the less the party may bargain meaningfully, the more susceptible the contract or a term will be to a claim of unconscionability." Restatement, § 208, Comment (a).[2] The Court finds Wernett has established the arbitration agreement has

---

[2]"In the absence of controlling statutory or case authority, Arizona courts generally follow the Restatement of the Law if its view 'is logical, furthers the interests of justice, is consistent with Arizona law and policy, and has been generally acknowledged elsewhere.'" *Wetherill v. Basham*, 197 Ariz. 198, 203, 3 P.3d 1118, 1123 (App. 2000), *quoting Ramirez v. Health Partners of Southern Arizona*, 193 Ariz. 325, 972 P.2d 658 (App. 1998).

elements of procedural unconscionability. *See Heinig v. Hudman*, 177 Ariz. 66, 73-74, 865 P.2d 110, 117-18 (App. 1994) (party asserting arbitration provision is unenforceable has burden).

However, the Court must also consider whether Service had "reason to believe that [Wernett] would not have accepted the agreement if [she] had known that the agreement contained the particular term." *Harrington*, 211 Ariz. at 247, *citation omitted*. A reason to believe:

> may be (1) shown "by the prior negotiations," (2) "inferred from the circumstances," (3) "inferred from the fact that the term is bizarre or oppressive," (4) proved because the term "eviscerates the non-standard terms explicitly agreed to," or (5) provided if the term "eliminates the dominant purpose of the transaction."

*Id*, *citations omitted*. Additionally, the doctrine of reasonable expectations "(6) 'requires drafting of provisions which can be understood if the customer does attempt to check on his rights" and consideration of "(7) any other facts relevant to the issue of what [the party] reasonably expected in this contract." *Id*. at 248, *citations omitted*.

In this case, there were no prior negotiations – there is no basis to think Wernett would or would not have expected an arbitration agreement. Similarly, an employment contract may or may not include an agreement to arbitrate, so there is no basis to conclude that Service had reason to believe that Wernett opposed the terms of the arbitration. *See generally Harrington*, 211 Ariz. at 248 (no reason to conclude contract to sell home would or would not include arbitration clause). Moreover, the Agreement does not eviscerate or eliminate the agreement for Service to hire Wernett. Additionally, the Agreement "'can be understood if [Wernett chose] to check on [her] rights.'" *Harrington*, 211 Ariz. at 249, *quoting Darner*, 140 Ariz. at 394.

As to whether the Agreement contained bizarre or oppressive terms, there is a strong public policy favoring arbitration. *Harrington*, 211 Ariz. at 248. The inclusion of the Agreement as part of the employment agreement is not, therefore, bizarre or oppressive. As discussed *infra*, however, some of the terms are oppressive. The Court also considers as relevant factors that the Agreement is a standardized contract, Wernett had a lack of

bargaining power, and Service failed to explain the terms to Wernett. The Court also considers the lack of showing that Wernett did not have an opportunity to read the Agreement and Service's lack of hiding the Agreement. The Court finds there was no reason for Service to believe that Wernett would not have accepted the agreement if she had known of the particular terms of the Agreement. However, the Court will consider the elements of procedural unconscionability in considering whether the Agreement is substantively unconscionable.[3]

2. *Substantive Unconscionability*

"Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Maxwell*,184 Ariz. at 88, 907 P.2d at 57, *citing Resource Management Co. v. Weston Ranch and Livestock Co.*, 706 P.2d 1025, 1041 (Utah 1985); *see also Harrington v. Pulte Home Corp.*, 211 Ariz. 241, 252, 119 P.3d 1044, 1055 (App. 2005) (factors showing substantive unconscionability include "contractual terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity").[4] In Arizona, a case-by-case approach is used in determining whether the terms imposed under an arbitration agreement denies a potential litigant the opportunity to vindicate her rights. *Batory v. Sears, Roebuck & Co.*, 456 F.Supp.2d 1137, 1141 (D.Ariz. 2006). Service asserts that Wernett has not shown that the agreement's terms are so one-sided as to oppress or unfairly surprise her.

---

[3]Reasonable expectations and unconscionability are each distinct grounds for invalidating or limiting a contract. *Harrington*, 211 Ariz. at 252.

[4]The Court notes that Service asserts that whether the parties have an agreement is decided by the Court, while the enforceability of any term of the agreement is decided by the arbitrator. *Foy v. Thorp*, 186 Ariz. 151, 920 P.2d 31 (App. 1996). However, consideration of the alleged unconscionability of the terms is necessary for the Court to determine whether the parties have an enforceable agreement to arbitrate.

a. *Limitation of Remedies*

Wernett asserts that the Agreement unlawfully limits the remedies available to her under Title VII and ACRA. Wernett asserts that if she is successful on her claims and adequate proof exists, she is entitled to recover compensatory damages, punitive damages, and an award of attorneys' fees and costs. *See* 42 U.S.C. § 19811 42 U.S.C. § 2000e-5(k); A.R.S. § 41-1481 (J). The Agreement, however, limits such a recovery:

> Each party waives any claim for and the arbitrator has no authority to award costs, expenses, attorneys's fees, punitive damages or tort damages. Swisher and Employee waive any claims for an award of damages that are excluded under this Agreement.

Motion, Ex. 1, p. 2. Wernett asserts that the far-reaching limitation on remedies is unenforceable. *See Graham Oil Co. v. ARCO Products Co.*, 43 F.3d 1244, 1246-48 (9th Cir. 1994) (arbitration clause that purported to waive remedies provided by federal statute and to shorten statute of limitations for filing such claims was unenforceable). By the nature of this provision, this provision is one-sided. The Court agrees that this term denies a potential litigant the opportunity to vindicate her rights. *Batory*, 456 F.Supp.2d at 1141. The Court finds this term is substantively unconscionable.

b. *Statute of Limitations*

Wernett asserts that the Agreement unlawfully shortens the statute of limitations:

> Any claim or dispute arising out of or relating to this Agreement or the Employee's employment must be brought within 6 months of the date the dispute first arises.

Motion, Ex. 1, p. 2. Wernett argues that this provision is unconscionable and unenforceable. *See Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1175 (2003) (forcing employees to comply with a strict one-year limitation period for employment related statutory claims is oppressive in a mandatory arbitration context); *Circuit City Stores, Inc. v. Mantor*, 335 F.3d 1101, 1107 (9th Cir. 2003), *cert. denied*, 540 U.S. 1160, 124 S.Ct. 1169, 157 L.Ed.2d 1204 (2004); *Circuit City Stores, Inc. v. Adams*, 179 F.3d 889 (9th Cir.), *cert. denied*, 535 U.S. 1112, 122 S.Ct. 2329, 153 L.Ed.2d 160 (2002); *Davis*, 485 F.3d at 1077-78 (one year universal limitation period is substantively unconscionable); *Adler v. Fred Lind Manor*, 153

Wash.2d 331, 103 P.3d 773, 787 (Wash. 2004 (en banc) (180 day limitation provision in an employment arbitration agreement was substantively unconscionable because it unreasonably favors the employer).

Wernett also asserts that the use of the limiting phrase "first arises" operates to preclude an action based on a continuing violation theory. *See Freeman v. Oakland Unified School Dist.*, 291 F.3d 632 (9th Cir. 2002) (continuing violation theory under Title VII provides that a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to limitations period). Wernett asserts that the Agreement is unconscionable because an employee seeking to redress a series of connected perceived violations would be precluded under the provision from bringing her claim if the date the dispute "first arose" was more than six months prior. *See Davis*, 485 F.3dat 1077 (court is particularly concerned about barring a continuing violations theory by employees and striking down as unconscionable a strict one-year limitations period).

Wernett also argues that the Agreement's limitations period completely discounts and ignores the statutory enforcement scheme, including the filing of an administrative charge, under the ACRA and Title VII. *See* A.R.S. § 41-1481(A) (ACRA requires the charge of discrimination be filed within 180 days "after the alleged unlawful practice occurred"); *see also* 42 U.S.C § 2000e-5(e)(1).

The Ninth Circuit has made clear that such strict limitations provisions in an arbitration agreement may deprive an employee of benefits and, because the benefits of such a provision flow only to any employer, such a provision is substantively unconscionable. *Ingle*. The Court finds the limitations provision of the Agreement to be unconscionable.[5]

c. *Discovery*

Wernett also asserts that the Agreement impermissibly limits the discovery available

---

[5]Arguably, the lack of tolling may not be enforceable. *See Wilks v. The Pep Boys*, 241 F.Supp.2d 860 (M.D.Tenn. 2003).

- 10 -

to Wernett. The Agreement provides:

> . . . The parties may request subpoenas for documents at the pre-arbitration conference from any other party or witness and the documents must be produced within 10 days of the pre-arbitration conference with copies provided to all parties. The parties may request at the pre-arbitration conference subpoenas to take a maximum of 2 depositions prior to the arbitration hearing. No additional witnesses other than the witnesses disclosed at the pre-arbitration conference or documents may be introduced at the Arbitration, exception for rebuttal purposes only.

Motion, Ex. 1, p. 1. Wernett asserts that the failure of the Agreement to incorporate the relevant rules of civil procedure, the Agreement's limitation of depositions, and the Agreement's requirement of subpoenas to obtain documents and depose a representative of Service exhibits the unconscionability of the Agreement. However, the Supreme Court stated in a similar case:

> there has been no showing in this case that the . . . discovery provisions, which allow for document production, information requests, depositions, and subpoenas, will prove insufficient to allow [plaintiff] . . . a fair opportunity to present [her] claims. Although those procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.

*Gilmer*, 500 U.S. at 31. Although discovery is limited pursuant to the terms of the Agreement, it is not precluded. Indeed, although the parties are limited in the number of depositions, they are not limited in the number of interviews they are permitted. This provision is cost-saving to all parties and the Court finds this term is not unconscionable.

d. *Payment of Arbitration Fees and Venue*

Wernett asserts that the payment provision of the Agreement is unfairly one-sided and substantively unconscionable. She also asserts that the provision requiring arbitration to take place in North Carolina is unconscionable. The Agreement provides:

> At the pre-arbitration [c]onference, the arbitrator will determine the amount of time required for the arbitration and set their respective fees accordingly. Each party will pay his or her chosen attorney's fees. Compensation to the neutral arbitrator represents an independent obligation of the parties. If either party is unable to pay their share of the neutral arbitrator's fee, the other party has the option to pay the neutral arbitrator's fee in full and continue with the arbitration. The cost assumed by the paying party for the non-moving party may be deducted from any award to the non-paying party.
>
> The pre-arbitration conference and the arbitration will take place in Charlotte, North

1  Carolina, at Swisher's corporate office.

2  Motion, Ex. 1, p. 2. Where "a party seeks to invalidate an arbitration agreement on the grounds that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 92, 121 S.Ct. 513, 522, 148 L.Ed.2d 373 (2000). Indeed, Arizona courts place the burden of proving that a term is unduly expensive on the party seeking to invalidate the agreement. *See Batory*, 456 F.Supp.2d at 1141. The Agreement makes clear that Wernett would be required to pay her attorney's fees and be responsible for her share of the arbitration costs if she was successful at arbitration. Further, her affidavit demonstrates such expenses would be expensive to her.[6] In a similar situation, the Court of Appeals of Arizona stated "[t]he affidavits offer no specific facts regarding appellees' financial situations, only conclusory statements. There is no showing of assets or why arbitration costs would be a hardship, let alone a *prohibitive* hardship[.]" *Harrington*, 211 Ariz. at 252-53. Wernett has provided information regarding her limited receipt of funds (unemployment compensation); additionally, during argument, counsel indicated that Wernett did not have any significant asserts. Moreover, this case differs from *Harrington* in that the arbitration agreement in *Harrington* permitted the arbitrator to reduce or defer administrative fees.

The Ninth Circuit has held that, where an arbitration agreement requires an employee to split the arbitrator's fees with the employer and the fees are not, therefore, speculative, such an "allocation scheme alone would render an arbitration agreement unenforceable[.]" *Adams*, 279 F.3d at 894. *Adams*, however, involved application of California law in determining whether an arbitration agreement was unconscionable.[7] Under Arizona law, as

---

[6]Wernett's affidavit indicates that she is unemployed and receiving unemployment compensation.

[7]Arizona courts find decisions from other states with constitutional provisions similar to Arizona's to be very persuasive. *Empress Adult Video and Bookstore v. City of Tucson*, 204 Ariz. 50, 58, 59 P.3d 814, 822 (App. 2003), *citing Faires v. Frohmiller*, 49 Ariz. 366, 372, 67 P.2d 470, 472 (1937); *see also Culpepper v. State*, 187 Ariz. 431, 439, 930 P.2d 508,

set forth in *Harrington*, an allocation scheme that splits the arbitrator's fees is not sufficient alone to render an arbitration agreement unenforceable. Indeed, during the hearing on the motion, counsel for Lifeline indicated that the exact terms would be resolved by the arbitrator. However, the Agreement does not provide for this modification. Counsel appears to be agreeing that strict compliance with the Agreement may be substantively unconscionable in this case. Because the Agreement does not provide that the arbitrator can reduce or defer the fees and Wernett has shown her limited income, the Court finds this provision to be substantively unconscionable. Indeed, it appears that, if Wernett could not afford the arbitration expenses and Service did not initially pay the arbitration costs, arbitration would cease; it does not appear that any other remedy would then be available to Wernett in that case. *See Harrington*, 211 Ariz. at 252 (arbitration is appropriate if prospective litigant can effectively vindicate her rights in the arbitral forum).

Additionally, forum selection clauses are valid and should be given effect unless enforcement of the clause would be unreasonable. *Nagrampa*, 469 F.3d at 1287. However, the forum selection provision is unconscionable if the place and manner restrictions of a forum selection provision are unduly oppressive, or has the effect of shielding the stronger party from liability. *Id.* In determining the reasonableness of the place and manner provisions of an arbitration agreement, courts are to take into account the respective circumstances of the parties. *Id.* at 1288. In this case, the Agreement provides that the pre-arbitration conference and the arbitration take place at Service's corporate headquarters in

---

516 (App. 1997) (decision of California Supreme Court interpreting similar statutory language persuasive); *Moore v. Browning*, 203 Ariz. 102, 109, 50 P.3d 852, 859 (App. 2002) (California caselaw only followed to the extent that it is sound). Arizona and California law regarding unconscionability is somewhat similar. The Court will consider *Adams* to the extent it does not conflict with Arizona law and is factually similar to this case. *See generally Santana v. Zilog, Inc.*, 95 F.3d 780, 783 (9th Cir. 1996) (in the absence of state supreme court precedent, federal court may consider well-reasoned decisions from other jurisdictions).

North Carolina.[8]

Wernett asserts that similar clauses have been stricken because they are nothing more than an attempt by the corporate party to shield itself from liability and operates to preclude the other party from pursuing claims. *See Comb v. PayPal, Inc.*, 218 F.Supp,2d 1165, 1177 (N.D.Cal. 2002) (limiting venue to PayPal's backyard appears to be yet one more means by which the arbitration clause serves to shield PayPal from liability instead of providing a neutral forum in which to arbitrate disputes); *Armendariz*, 24 Cal.4th at 118, 6 P.3d 669 (structuring an arbitration provision to effectively preclude the other party from pursuing a claim would be unconscionable).

During the hearing on the motion, counsel for Service indicated that she had informed Plaintiff's counsel that arbitration could occur in Arizona. This appears to be an implicit agreement that this term of the Agreement is substantively unconscionable in this case. Moreover, considering the respective circumstances of the parties, the Court finds the forum selection provision of the Agreement is unconscionable.

e. *Service's Access to a Judicial Forum*

Wernett also asserts that the Agreement improperly gives Service access to a judicial forum. The Agreement provides:

> Nothing in this section will prevent Swisher from obtaining temporary, preliminary or permanent injunctive relief, with a $1,000.00 bond, from a court or agency of competent jurisdiction against actual or threatened conduct causing loss or damage that can be remedied under usual equity rules.

Motion, Ex. 1, p. 2. Wernett asserts Service's ability to seek judicial relief yet eliminated such a remedy for Wernett lacks mutuality and is substantively unconscionable. *See Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1293 (9th Cir. 2006) (en banc) (employer's

---

[8]The Court notes that the Agreement was signed in Arizona, Wernett performed her work for Service in Arizona, Wernett lives in Arizona, and Wernett (and presumably witnesses) will incur travel expenses to North Carolina. Further, Wernett may need to seek counsel in North Carolina or incur additional expenses of counsel's travel. In her affidavit, Wernett asserts she cannot afford the expenses for attending arbitration.

- 14 -

reservation to itself of the right to seek any provisional remedy it decides it needs is substantively unconscionable because it lacks mutuality); *Davis v. O'Melveny & Myers*, 485 F.3d at 1081 (non-mutual exception allowing the employer a judicial remedy to protect confidential information was one-sided and substantively unconscionable).

The Court of Appeals of Arizona has stated that "[p]arties may make a distinction between issues subject to arbitration and issues for the court to decide." *Smith v. Logan*, 166 Ariz. 1, 3, 799 P.2d 1378, 1380 (App. 1990). The court found the exception to arbitration acceptable despite the non-mutuality of the exception. This differs from California case law which requires employee arbitration agreements to have a "modicum of bilaterality" to be enforceable unless the employer has a reasonable justification for the agreement. *See Armendariz v. Foundation Health Psychcare Serv., Inc.*, 24 Cal.4th 83, 117-18 (2000). However, the provision in the Agreement does not make any distinction as to issues . . . only to the party that may seek judicial relief. Service has not responded to this argument. Because the Agreement makes a distinction between the parties, as opposed to the issues, the Court finds this provision is substantively unconscionable.

C. *Severance*

The Court has found the Agreement is a contract of adhesion and has elements of procedural unconscionability despite the lack of showing that Service had reason to believe that Wernett would not have accepted the agreement if she had known that the agreement contained particular terms. Further, the Court has found that the provisions limiting the remedies available to Wernett, shortening the statute of limitations, requiring Wernett to bear the costs of bringing her claim, specifying the place of arbitration, and permitting Service to access a judicial forum are substantively unconscionable. The Court "may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause[s], or it may so limit the application of any unconscionable clause[s] as to avoid any unconscionable result." A.R.S. § 47-2302.A. However, the Court "cannot create a new agreement for the parties to uphold the contract." *Olliver/Pilcher Insur. Inc. v. Daniels*, 148

Ariz. 530, 715 P.2d 1218, 1221 (1986), *citations omitted*; *see also Fearnow v. Ridenour Swenson, Cleere & Evans, P.C.*, 213 Ariz. 24, 32, 138 P.3d 723, 731 (2006) (where contracts contain restrictive covenants, but not containing a severability clause, Arizona courts eliminate "grammatically severable, unreasonable provisions").

In *Ferguson v. Countrywide Credit Industries, Inc.*, 298 F.3d 778, 787 (9th Cir. 2002), the court recognized an "insidious pattern" in the arbitration agreement that provided the employer with undue advantages in an employment-related dispute.[9] Moreover, the court found that offending provisions so permeated the arbitration agreement that severance was not appropriate. 298 F.3d at 787-88.

The Agreement at issue in this case, however, does not contain an insidious pattern that provides Service with undue advantages in employment related disputes. Severance of the unconscionable terms will permit mutual benefits and restrictions to each party. Further, severance of the unconscionable terms will permit an arbitrator to determine appropriate procedures (e.g., allocation of fees, venue, etc.). The unconscionable terms will be severed and the Motion to Dismiss will be granted.

Accordingly, IT IS ORDERED:

1. Defendant Service Phoenix, LLC's Motion to Dismiss Plaintiff's Complaint and Compel Arbitration [Doc. # 4] is GRANTED IN PART.

2. The following provisions are severed from the Agreement:

   a. "Each party waives any claim for and the arbitrator has no authority to award costs, expenses, attorneys's fees, punitive damages or tort damages. Swisher and Employee waive any claims for an award of damages that are excluded under this Agreement." Motion, Ex. 1, p. 2.

---

[9]*Ferguson* was based on California law. The Court will consider *Ferguson* to the extent it does not conflict with Arizona law and is factually similar to this case. *See generally Santana v. Zilog, Inc.*, 95 F.3d 780, 783 (9th Cir. 1996) (in the absence of state supreme court precedent, federal court may consider well-reasoned decisions from other jurisdictions).

b. "Any claim or dispute arising out of or relating to this Agreement or the Employee's employment must be brought within 6 months of the date the dispute first arises." Motion, Ex. 1, p. 2.

c. "At the pre-arbitration [c]onference, the arbitrator will determine the amount of time required for the arbitration and set their respective fees accordingly. Each party will pay his or her chosen attorney's fees. Compensation to the neutral arbitrator represents an independent obligation of the parties. If either party is unable to pay their share of the neutral arbitrator's fee, the other party has the option to pay the neutral arbitrator's fee in full and continue with the arbitration. The cost assumed by the paying party for the non-moving party may be deducted from any award to the non-paying party.
The pre-arbitration conference and the arbitration will take place in Charlotte, North Carolina, at Swisher's corporate office." Motion, Ex. 1, p. 2.

d. "Nothing in this section will prevent Swisher from obtaining temporary, preliminary or permanent injunctive relief, with a $1,000.00 bond, from a court or agency of competent jurisdiction against actual or threatened conduct causing loss or damage that can be remedied under usual equity rules." Motion, Ex. 1, p. 2.

3. The parties shall participate in arbitration pursuant to the remaining terms of the Agreement.

4. This matter is DISMISSED WITHOUT PREJUDICE.

5. The Clerk of the Court shall enter judgment and shall close its file in this matter.

DATED this 2nd day of July, 2009.

_____
Cindy K. Jorgenson
United States District Judge